### ARGUED AND DETERMINED

##### IN THE

# SUPREME JUDICIAL COURT

##### OF

# MASSACHUSETTS.

---

DANIEL HIGGINS *vs.* THREE HUNDRED CASKS OF LIME,
Horatio B. Emerson, claimant.

Suffolk. March 5, 1879. — Nov. 23, 1880. MORTON & ENDICOTT, JJ., absent.

The provisions of the Gen. Sts. *c.* 49, §§ 122–124, relating to the inspection and sale, in this Commonwealth, of lime imported from the State of Maine, are repugnant to art. 1, § 8, of the Constitution of the United States, giving to Congress the power to regulate commerce among the several States, and void.

LIBEL, filed by the inspector of lime of the city of Boston, praying that the lime might be seized and sold, for violation of the provisions of the Gen. Sts. *c.* 49, §§ 118–125. An order of notice was issued, and Horatio B. Emerson appeared as claimant.

At the trial in the Superior Court, before *Rockwell,* J., it was agreed that the lime was manufactured in the State of Maine, and was imported into this Commonwealth. Evidence was introduced bearing on the questions whether the casks containing the lime were of the size and had the number of hoops required by law, and whether they had been exposed for sale, which evidence it is now unnecessary to state.

The judge ruled that the libellant could not maintain his libel, and ordered a verdict for the claimant; and reported the case for the determination of this court. If the ruling was right, the verdict was to stand; otherwise, a new trial to be ordered.

*J. E. Avery*, for the libellant.

*P. A. Collins & W. C. Brinley*, for the claimant.

LORD, J.   We have not deemed it necessary in this case to carefully analyze the various provisions of the law of this Commonwealth contained in the Gen. Sts. *c.* 49, §§ 118–125, respecting the inspection and sale of lime.   If the lime be not subject to forfeiture under the provisions of that chapter, the ruling of the presiding judge at the trial was correct.   If, by the words of that statute, it be subject to forfeiture, such provision of law is void, as in conflict with the Constitution of the United States.

The Constitution of the United States established a government.   That government, like the government of the States over whose territory it extended, was restrained by a written Constitution, and its functions were to be exercised directly upon the people who were subject to it, through the three great departments into which popular government is divided, legislative, judicial and executive.   It is often said that the government thus formed is a government of limited powers.   In its proper sense, this is true.   The limit, however, is of the matters over which it has jurisdiction.   Upon those matters committed to its jurisdiction, it acts directly upon the individuals who are subject to it, and its authority and power are full and absolute upon such matters, except as restrained by the written Constitution which ordained it.   It is true, however, that very few of the ordinary affairs of men are within its jurisdiction; its object and purposes are tersely and comprehensively expressed in the preamble to its Constitution.   The means by which the great ends there recited are to be secured are carefully prescribed and defined.   Before that government was established, each one of the States, as to every other one, had been sovereign and independent; but each was comparatively limited in territory, and was separated from another only by an imaginary line.   In the ordinary conduct of human affairs, with no common arbiter between them, conflicts of jurisdiction and conflicts of authority must inevitably occur.   Each was in itself comparatively feeble in controversy with a foreign power.   Their interests were to a great extent identical, and intercommunication and inter-trade were necessities.

It is obvious that the two great subjects upon which the jurisdiction of a general government should be paramount are interstate commerce, and foreign commerce and foreign affairs; and so we find that, after providing for its self-preservation, the first power given to it as a government is "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes," and, to avoid the possibility of the abuse of such power, it is also provided that "no preference shall be given by any regulation of commerce or revenue to the ports of one State over those of another." U. S. Const. art. 1, §§ 8, 9. The effect of these constitutional provisions has been so frequently passed upon, both by the courts of this Commonwealth and of the United States, that it seems superfluous to cite authorities to the point. See *Norris* v. *Boston*, 4 Met. 282, 293, and 7 How. 283; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Brown* v. *Maryland*, 12 Wheat. 419; *State Freight Tax case*, 15 Wall. 232; *Welton* v. *Missouri*, 91 U. S. 275, 282; *Railroad Co.* v. *Husen*, 95 U. S. 465.

The result of all the decisions is, that the several States have no authority to prescribe different regulations in relation to the commerce in certain articles, dependent upon the State from which they are brought. This rule in no manner controls or limits the power of a State to enact appropriate health or inspection laws; for such laws are necessarily uniform, and are not dependent upon place.

An examination of the provisions of the statute of this Commonwealth shows at once their conflict with the Constitution of the United States. If the courts of this Commonwealth cannot take judicial notice that lime is manufactured in other States of the Union than Massachusetts and Maine, they certainly cannot judicially assume that it is not thus manufactured in other States. We think, however, that the manufacture of lime in several of the States is a matter of such common knowledge that it would be a mere affectation of judicial blindness not to recognize the fact.

Upon examination of the statute, it will be observed that it relates to no lime except that which is manufactured either in Massachusetts or in Maine; for, although the language of the statute requires an inspection of all lime "imported or sold therein," t prescribes no standard, either of quality, or mode

of packing, or size of casks, except as to lime manufactured in Massachusetts or imported from Maine. The peculiarity of the phraseology of § 122 of *c.* 49, "when an inspection is demanded of lime manufactured in and imported from the State of Maine," is significantly suggestive that lime imported from Maine is not even to be inspected unless there has been a previous demand for such inspection. The terms of the statute, however, are mandatory as to the size of the cask; and § 124 provides, "If a cask of lime is sold, or exposed to sale, or put on board of a vessel, contrary to the provisions of this chapter, the same shall be forfeited, and an inspector may seize and libel the same."

On a comparison of the provisions of §§ 121 and 122, it will be perceived that the size of the cask for Massachusetts lime differs from the size of that in which Maine lime may be sold, while there is no provision as to the size of cask in which lime may be sold if imported from any State but Maine.

It was said at the argument, that, at the time when the Legislature of Massachusetts first prescribed a size and other qualities of the cask in which lime imported from Maine might be sold, it adopted the size and qualities of cask prescribed by the Legislature of Maine for lime manufactured in that State. We cannot take judicial notice of that fact, nor can we take judicial notice of the other fact, also claimed in argument, that the characteristics of the casks seized from the possession of the defendant are substantially the same as are now required by the statutes of Maine. If these facts be so, it is merely illustrative of the dangers and difficulties of an attempt upon the part of one State to regulate the mode of preparing for market articles produced in another. We are not, however, to decide this question upon the ground that one course of legislation or another is preferable, but upon the broad and decisive prohibition of the Constitution of the United States of any attempt, on the part of any State to regulate commerce between the States; or, to speak with more exact accuracy, upon the surrender by the people, in every State, of the exclusive authority to the United States government to regulate commerce between the States.

*Judgment on the verdict.*