Argued May 23, reversed June 6, 1916.

# STATE v. JACOBSON.*

(157 Pac. 1108.)

**Constitutional Law—Validity of Statute.**

1. The courts will not declare a statute invalid unless its conflict with the Constitution is plain, and any reasonable doubt will be resolved in favor of a legislative enactment, and the act sustained.

**Constitutional Law—Power of Court—Validity of Statute.**

2. The validity of a statute depends on whether the legislature, in respect to the subject matter of the act, the means by which its object was to be accomplished, and the mode of enacting it, has kept within the constitutional limits, and, if it has, the courts cannot inquire into the proper exercise of the power.

**Commerce—Constitutional Provisions.**

3. Under Article I, Section 8, of the Constitution of the United States, giving Congress the power to regulate commerce with foreign nations and among the several states, the term "commerce" is a term of the highest import comprehending commercial intercourse in any and all its forms, including the transportation, purchase, sale and exchange of commodities between the citizens of the United States and the citizens or subjects of other countries and between citizens of different states.

**Commerce—Power of Congress—Exclusiveness.**

4. Under such provision the power of Congress is necessarily exclusive whenever the subjects of regulation are national in their character or admit only of one uniform·system or plan of regulation, such as commerce with foreign countries, and the transportation of goods between the states, both of which are within the exclusive regulatory power of Congress.

**Commerce—Foreign and Interstate Commerce—State Regulation— Validity.**

5. General Laws of 1915, page 396, entitled as an act to regulate the sale of eggs imported into the state from any foreign country, to regulate the sale of food the ingredients of which are in part composed of eggs imported into the state from any foreign country, etc., and by Section 6, providing that every person selling or offering for sale any food, etc., the ingredients of which are in part composed of eggs, imported into the state from any foreign country, shall display in a conspicuous place in his salesroom a sign of certain dimensions reading, "Imported Eggs Used Here," not aiming at the quality, condition or purity of the article of food, but intended to counteract the customs duty act, admitting eggs from foreign countries free, was not an exercise of the police power of the state, and its necessary effect being to impede commerce with foreign nations, and discriminate upon

---

*Upon the question of validity of police regulation as to branding or labeling articles of commerce, see note in 40 L. R. A. (N. S.) 875.

REPORTER.

the sale of an article of international commerce thereby depressing its sale, it invaded the power given to Congress by the commerce clause (Article I, Section 8 of the Constitution of the United States), and was void.

**Commerce—Power of Congress.**

6.   Where Congress has acted upon any subject matter of interstate or foreign commerce, even though such act may be detailed as to matters of a peculiarly local application, the states have no right or authority under the so-called police power, or otherwise, to act with reference to the same matter.

**Constitutional Law—Police Power.**

7.   The state has the right to interfere with the property and liberty of its citizens without compensation to them, provided the action is imperatively demanded in order to conserve or protect public health, welfare or prosperity.

> [As to constitutionality of state regulation of interstate commerce, see note in 27 Am. St. Rep. 547.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

The defendant, J. C. Jacobson, was prosecuted and convicted for a violation of Section 6 of Chapter 272 of the General Laws of Oregon for 1915, and appeals.

The title of the act reads thus:

"An act to regulate the sale of eggs that have been shipped or imported into the State of Oregon from any foreign country, requiring the marking of the containers thereof by all persons selling or offering the same for sale; to regulate the sale of food and drink, the ingredients of which are in part composed of eggs shipped or imported into the State of Oregon, from any foreign country, requiring marking of all bills of fare or menu cards placed on tables or counters in establishments, preparing, serving or offering for sale any such food or drink; to regulate the placing of cards in all packages or wrappers inclosing manufactured food products, before being sold or offered for sale, which are composed wholly or in part of eggs shipped or imported into the State of Oregon from any foreign country, requiring importers of foreign eggs to report shipments to dairy and food commis-

sioner, and fixing penalties for the violation of any of the provisions thereof."

Section 6 is as follows:

"Every person, firm, company or corporation preparing, serving, selling or offering for sale any food or drink, the ingredients of which are in part composed of eggs shipped or imported into the State of Oregon from any foreign country shall display in a conspicuous place in his or their public salesroom, a sign which shall not be less than six inches in height and three feet in length, bearing the words 'Imported Eggs Used Here' in black-faced letters not less than three inches in height and one-quarter of an inch in width, upon white ground."

The gist of the complaint is that:

The defendant, J. C. Jacobson, did unlawfully offer for sale and sell in a public salesroom "certain food, to wit, a cake, the ingredients of which said cake were then and there in part composed of eggs shipped and imported into the said State of Oregon from said foreign country, to wit, China, and did then and there unlawfully and willfully fail and neglect to display in a conspicuous place or any place in said public salesroom any sign whatsoever bearing the words, "Imported Eggs Used Here.          Reversed.

For appellant there was a brief over the name of *Messrs. Winter, Wilson & Johnson,* with an oral argument by *Mr. Roscoe R. Johnson.*

For respondent there was a brief with oral arguments by *Mr. Walter H. Evans,* District Attorney, and *Mr. George Mowry,* Deputy District Attorney.

Mr. Justice Bean delivered the opinion of the court.

In order to avoid a misunderstanding, and as a preface, it is stated that the writer believes that the intention of our legislature in attempting to protect

the industries of our commonwealth is highly commendable. That there is a crying need for such legislation may be admitted. The inquiry here is: Where does the power to enact laws designed for such a beneficent purpose reside?

1. The courts will not declare a statute invalid unless its conflict with the Constitution is plain. Any reasonable doubt will be resolved in favor of a legislative enactment, and the act sustained: Cooley, Const. Lim. (7 ed.), 252, 253; *State* v. *Schluer,* 59 Or. 18, 35 (115 Pac. 1057).

2. Whether a statute is unconstitutional or not is always a question of power; that is, a question whether the legislature in the particular case, in respect to the subject matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within the constitutional limits and observed the constitutional conditions. In any case in which this question is answered in the affirmative, the courts are not at liberty to inquire into the proper exercise of the power. They must assume that legislative discretion has been properly exercised: Cooley, Const. Lim. (7 ed.), 257; *State* v. *Bunting,* 71 Or. 259, 269 (139 Pac. 731, Ann. Cas. 1916C, 1003).

3. Counsel for defendant contend that the section of the act under which these criminal proceedings were initiated is in contravention of Section 8, Article I, of the United States Constitution, which provides that the Congress of the United States shall have power to regulate commerce with foreign nations among the several states, and with the Indian tribes, and that the act is void. Counsel for plaintiff claim that the act in question in this case is a police regulation enacted within the legitimate scope of the police power of the state. "Commerce" as used in the above constitu-

tional provision is held to be a term of the largest import. It comprehends intercourse for the purposes of trade in any and all its forms, including the transportation, purchase, sale and exchange of commodities between the citizens of our country and the citizens or subjects of other countries and between citizens of different states: *Welton* v. *State of Missouri,* 91 U. S. 275 (23 L. Ed. 347).

4. The power granted to the Congress of the United States by this constitutional provision is necessarily exclusive whenever the subjects of it are national in their character or admit only of one uniform system or plan of regulation: *Robbins* v. *Shelby County Tax. Dist.,* 120 U. S. 489 (30 L. Ed. 694, 7 Sup. Ct. Rep. 592); *Walling* v. *Michigan,* 116 U. S. 446 (29 L. Ed. 691, 6 Sup. Ct. Rep. 454); *Welton* v. *Missouri,* 91 U. S. 275 (23 L. Ed. 347); *Cooley* v. *Board of Wardens,* 12 How. 299 (13 L. Ed. 996); *Brown* v. *Houston,* 114 U. S. 622 (29 L. Ed. 257, 5 Sup. Ct. Rep. 1091). That portion of commerce with foreign countries and between the states which consists in the transportation and exchange of commodities is of national importance, and admits and requires uniformity of regulation. Such commerce is therefore under the exclusive regulatory power of the Congress of the United States: *Henderson* v. *Mayor of New York,* 92 U. S. 259 (23 L. Ed. 543); *Welton* v. *Missouri,* 91 U. S. 275 (23 L. Ed. 347); *Chy Lung* v. *Freeman,* 92 U. S. 275 (23 L. Ed. 550).

5-7. The section of the statute in the case at bar deals with a recognized article of international commerce, and by its terms places restrictions upon the sale of such commodity. The fact that the basis of the restrictions of that part of the act in question is solely the place from whence the article is shipped to this state, and not the distance that it has been transported,

nor the time consumed in such shipment so as to point
to the fact that the freshness of the product may per-
chance be dimmed, or, in other words, the fact that the
quality, condition or purity of the article of food is
not the result aimed at by the law, leads to the con-
clusion, it seems to us, that the act is not designed to
prevent the sale of impure or unwholesome food, nor
to protect the health of the inhabitants of the state.
Therefore it does not call into requisition the police
power of the state.   Shipments of goods for a dis-
tance of 2,000 or 3,000 miles from a sister state into
the State of Oregon would not be under the restrictions
of the act; while such products imported into the State
from a foreign country and transported for a much
less distance would be subject to the requirements of
the law.   Foreign products and those of other states
are alike under the protection of the Constitution of
the United States.   Commerce between the State of
Oregon and the Dominion of Canada or the empire of
Great Britain or with China is upon the same basis
as commerce between Oregon and any of the sister
states of the Union; for Congress has so declared.   If
the State of Oregon should provide that no one could
sell eggs from Iowa unless he placed in his salesroom
a sign, ''These Eggs Shipped from Iowa,'' and should
require no label for any other eggs, would anyone
doubt that such a statute would be invalid?   Trade
with foreign nations and the State of Oregon must be
just as free as between the latter and any sister state.
The restriction in the section of the act in question
must necessarily interfere with, impede, and obstruct
that freedom of transportation and exchange between
this nation and foreign countries which such articles
would upon their merits otherwise have.   This sec-
tion of the law is beyond the power of state legislation

and is void. The Constitution of the United States in the clause known as the "commerce clause" above referred to has granted to Congress the power to regulate commerce with foreign nations and between the states. Since the act in question is an impediment and an obstruction upon international commerce, it is pertinent to inquire what rights, if any, any state of the Union has to make restrictions of any kind upon interstate or foreign commerce under the exercise of the police power of the state, or otherwise. The well-recognized rule governing the question is that, if Congress has acted upon any subject matter of interstate or foreign commerce, even although that action may be detailed as to matters of a peculiarly local application, then the states have no right nor authority under the so-called police power, or otherwise, to act with reference to the same matter.

In the case of *Welton* v. *Missouri,* 91 U. S. 275 (23 L. Ed. 347), a statute of that state required a license from persons proposing to deal in wares and merchandise produced in other states, but required no such license from individuals selling goods grown, produced or manufactured within the state. In that case it was held that the act was unconstitutional. In the course of the opinion Mr. Justice FIELD said:

"The very object of investing this power in the general government was to insure this uniformity against discriminating state legislation. * * The power which insures uniformity of commercial regulation · must cover the property which is transported as an article of commerce from hostile or interfering legislation until it has mingled with and become a part of the general property of the country, and subjected like it to similar protection, and to no greater burdens. * * It is sufficient to hold now that the commercial power [of the federal government] continues until the com-

modity has ceased to be the subject of discriminating legislation by reason of its foreign character. That power protects it, even after it has entered the state, from any burdens imposed by reason of its foreign origin."

In *Guy* v. *Baltimore,* 100 U. S. 434 (25 L. Ed. 743), Mr. Justice HARLAN, speaking for the court, said:

"The power of the national government over commerce with foreign nations and among the several states is broad and comprehensive. It reaches the interior of every state of the Union, so far as it may be necessary to protect the products of other states and countries from discrimination, by reason of their foreign origin."

In the case of *Commonwealth* v. *Caldwell,* 190 Mass. 355 (76 N. E. 955, 112 Am. St. Rep. 334, 5 Ann. Cas. 879), in considering a statute of that state which required a license to be obtained by persons desiring to sell agricultural products of other countries, but did not exact one from those selling the same products of the United States, it was said:

"Many agricultural products are articles of commerce, and in this respect there is, in the statute, a discrimination in favor of articles produced, in the United States. It has been held many times that such an attempt at discrimination by a state is of no effect. * * The cases enunciating the general doctrine in the Supreme Court of the United States are very numerous, and many of them are cited and reviewed by Mr. Justice GRAY in *Emert* v. *Missouri,* 156 U. S. 296 [39 L. Ed. 430, 15 Sup. Ct. Rep. 367]. While in many of them the discrimination was against articles coming from other states, the rule in reference to discrimination against articles of foreign production is the same."

In *People* v. *Hawkins,* 157 N. Y. 1 (51 N. E. 257, 68 Am. St. Rep. 736, 42 L. R. A. 490), the court had under

consideration the validity of a statute which provided that before any sale could be made of goods manufactured in penal institutions, they should be labeled "Convict-made Goods." A prior statute applying only to convict-made goods made without the State of New York had been held unconstitutional before the consideration of that examined in the *Hawkins Case.* The New York Court of Appeals decided that there was a discrimination in the second statute, and in the course of the opinion Mr. Justice O'BRIEN, speaking for the court, said:

"Assuming that it [the statute] forbids the sale in this state of the convict-made goods of Ohio, it is in conflict with the commerce clause of the federal Constitution. The article described in the indictment in this case came into this state from a penal institution in Ohio through the operation of interstate commerce. The argument in favor of the validity of the statute assumes and asserts that it was not only the purpose of the statute, but of the Constitution of the state, to discriminate against such articles and in favor of the same articles, produced by free labor, in the markets of this state. It was a regulation of commerce by means of which the value of merchandise produced in another state was to be depressed or its sale entirely prohibited."

The right of a citizen both as to his property and liberty must at times be subordinated to the well-being of the community at large. Unquestionably the state has the right to interfere with the property and liberty of its citizens without making compensation to them for such interference or obstruction, provided the action is imperatively demanded in order to conserve or protect public health, welfare or prosperity: *Sterrett & Oberle Pack. Co.* v. *Portland,* 79 Or. 260 (154 Pac. 410); 8 Cyc. 866. In the present case the articles in question were imported from a foreign

country. They are subject to the Pure Food and Drug Act of the United States. In the State of Oregon the statute makes a sale of food articles which do not meet the standard set for them a penal offense. The health of the public as to articles of food brought from a foreign country and sold within the State of Oregon is fully protected both by the federal and the state law; and there is no imperative public necessity justifying the invasion of the constitutional rights of citizens as to the security of their property and the enjoyment of their liberty.

In the case of *Daniel Higgins* v. *Three Hundred Casks of Lime,* 130 Mass. 1, the Supreme Court of that state considered a Massachusetts statute which provided for a regulation of the size of casks of lime imported from the State of Maine. It was held that the requirement was an attempt to regulate commerce between states, and for that reason alone it was unconstitutional and void. In *State* v. *Goodhue,* 63 Or. 117 (126 Pac. 986), this court examined an act very similar to the one in question, providing that it should be unlawful for a person to sell butter cut from any tub unless the same was labeled "Tub Butter," provided, however, that the act did not apply to persons selling butter from tubs or packs manufactured at any plant owned or operated by a person within the State of Oregon. Holding the act unconstitutional, Mr. Chief Justice EAKIN, speaking for the court, said:

"The fault with the statute is the proviso that permits an Oregon creamery to change the form of tub butter manufactured at its own plant that has not been manufactured more than 20 days into rolls or squares, and offer it for sale without branding it 'Tub Butter.' This privilege is withheld from other creameries and manufacturers of butter as to tub butter, and is discrimination in favor of Oregon creameries,

80 Or.—42

in violation of Section 20, Article I, of the Oregon Constitution."

The section of the act in question does not meet the tests prescribed for a police power regulation, and it may be safely said that the real purpose of the statute was to counteract the customs duty act of the Congress of the United States, which admitted eggs from foreign countries without duty. It is discriminatory. It places a restriction upon the sale of an article of international commerce, and imposes a condition upon such sale only if imported into the State of Oregon from a foreign country. It does not affect the sale of a like article if produced in Oregon or in any other state of the Union. The inevitable result of such discrimination is to depress the sale of the commodity, impede commerce with foreign nations, and invade the domain of legislation given to Congress, and it violates Section 8, Article I, of the United States Constitution. The section is void.

Objection is also urged that the section involved is repugnant to the Constitution of the State of Oregon. This is not necessary to consider. While in all cases we are reluctant to declare a statute invalid, nevertheless in the present case our duty seems plain.

The judgment of the lower court is reversed and the action dismissed.      REVERSED. ACTION DISMISSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE BENSON concur.

MR. JUSTICE EAKIN absent.