Argued September 9, affirmed November 25, petition for
rehearing denied December 9, 1959

# STATE OF OREGON *v.* HOOVER

347 P. 2d 69

*Glenn D. Ramirez* and *Robert M. Redding,* Klamath

Falls, argued the cause for appellant. Glenn D. Ramirez submitted the brief.

O. W. *Goakey*, Klamath Falls, argued the cause for respondent. With him on the brief was Arthur A. Beddoe, Klamath Falls.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY and REDDING, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Raymond Hoover, from a judgment of the circuit court based upon a verdict which adjudged him guilty of the crime proscribed by ORS 166.270 which provides in part:

> "* * * any person who has been convicted of a felony against the person or property of another or against the Government of the United States or of this state * * * who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person * * * shall be punished upon conviction by imprisonment in the penitentiary for not more than five years."

The defendant had formerly been convicted of automobile theft, and thus was in that particular subject to the act.

The defendant presents ten assignments of error; the principal one of them is based upon a contention that the evidence upon which the conviction was based was the fruit of an unlawful search and seizure, and therefore should have been suppressed.

Early in the morning hours of August 30, 1958, the defendant was driving in a borrowed automobile about the city of Klamath Falls. With him in the car were: Phyllis Mae Hood, Patsy Hoover, Randolph Tupper and Irwin Weiser. The defendant was behind the wheel.

Patsy Hoover was in the front seat next to him, and either Tupper or Weiser (there being some dispute in the testimony) was seated next to Patsy Hoover. Phyllis Mae Hood and one of the men were seated in the rear seat. Weiser testified for the defense that the defendant, Patsy Hoover, Phyllis Hood and himself had been drinking heavily throughout the previous day.

Shortly before 2:30 a.m. Officer Floyd Pierce of the Klamath Falls police department observed the defendant's car double parked in front of Vern's Tavern and waved it on. As the car moved away two men who had been talking to its occupants ran to Pierce and told him that the defendant had threatened them with a revolver. Pierce radioed for assistance and took off in pursuit of the automobile. Using his siren and lights he stopped the car in front of Basin Motors. Officers Olson and Chlopek soon afterwards appeared on the scene.

There is a substantial disagreement between the state's witnesses as to what happened next. According to Officer Olson, Pierce told the defendant that he had been accused of pointing a gun at some people uptown and asked, "Where is the gun?" The defendant replied, so Olson swore, that he had no gun and Pierce then said, "Well, I am placing you under arrest for pointing a gun at those two Mexicans up town." But Pierce himself testified that no formal arrest was made. According to his story, he asked Hoover whether he was carrying a gun and received the reply that he was not. On cross examination of Pierce, in answer to the question, "But you didn't place anybody under arrest before you searched them in this case, did you?" his answer was, "Not that I can remember."

Following the brief colloquy between Pierce and the defendant everyone was asked to get out of the automobile. The men did so but Mrs. Hoover remained

seated in front and Mrs. Hood in back. Pierce searched the defendant's person and found nothing. Mrs. Hood then beckoned Pierce to step over to the rear window and whispered to him that Mrs. Hoover was sitting on the gun. Pierce and Mrs. Hood both testified to this conversation but Officer Olson did not happen to hear it. Pierce thereupon went to the driver's side of the car. The door was open and he flashed his light on Mrs. Hoover and the car seat. Observing the butt end of a revolver protruding from under Mrs. Hoover's body he moved around to the other side of the car and seized the gun, either by forcibly lifting Mrs. Hoover slightly or pushing her over.

When he had thus obtained the gun Officer Pierce asked the defendant why he "pulled" it and the defendant, according to Pierce's testimony, replied that "no damned Mexicans were going to pull a flip blade knife on him." Officer Olson also testified that the defendant came up to him and asked why he was being arrested, saying, "No one is going to pull a knife on me." The defendant was then taken to the police station. According to Pierce, the whole sequence of events in front of Basin Motors consumed but two or three minutes.

The entire evidence as to the defendant's possession of the revolver consists of his own admissions to Pierce and Olson and the testimony of Mrs. Hood. She testified that shortly before the car was halted in front of Basin Motors the defendant asked Mrs. Hoover "what she could do with the gun or where she could hide it, and she told him to give it to her and she would sit on it." It should be observed that Mrs. Hood, like the defendant, is a convict, having on a past occasion been sentenced to three years in the Oregon State Penitentiary for the crime of assault. The two individuals allegedly threatened by the defendant did not testify.

The defendant made a timely motion for suppression and return of the evidence on the ground that it was obtained by an illegal search and seizure. The motion was denied after a hearing. At the trial the revolver and holster taken from the car were introduced as the state's exhibit "A."

We will now consider the first and sixth assignments of error which are directed at the denial of the defendant's motion for suppression of the evidence pertaining to the weapon. The crucial issue which they submit is whether the search which produced the weapon was or was not lawful. Since we will hold that it was lawful, it will be unnecessary to determine whether evidence obtained by an unlawful search is admissible in a subsequent criminal prosecution of the party whose rights were violated in the search. The federal practice is to deny the use of such evidence. *State v. Laundy*, 103 Or 443, 204 P 958, 206 P 290 (1922), declared:

> "* * * This rule of practice sanctioned by the Supreme Court of the United States ought, for the same reasons which recommended it to the court, be adopted and followed by the courts of this state. * * *"

But there, as here, it was not necessary to reach the question. We have never been confronted with a case which has squarely demanded a decision to accept or reject the dictum of the Laundy case.

■ The defendant challenges the search and seizure as a violation of both the United States Constitution, Amendment IV, and of the Oregon Constitution, Article I section 9. It is settled that the due process clause of the Fourteenth Amendment does not in the ordinary case require state courts to exclude evidence obtained by means that constitute an unlawful search and seizure. *Wolf v. Colorado*, 338 US 25, 69 S Ct 1359,

93 L Ed 1782 (1949). The defendant must therefore rely on the guarantees furnished by state law. The Oregon Constitution, Article I section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * * *"

This court has from time to time expressed itself as more willing to sanction searches of automobiles than of other types of property. *State v. Duffy*, 135 Or 290, 295 P 953 (1931), citing *Carroll v. United States*, 267 US 132, 45 S Ct 280, 69 L Ed 543, 39 ALR 790 (1925); *State v. DeFord*, 120 Or 444, 250 P 220 (1926).

■ We note that the defendant was driving a borrowed car. However, we think that a bailee has an interest of sufficient substance to fall within the constitutional protection. Cf. *Blok v. United States*, 70 A2d 55 (Mun Ct D.C.), affirmed *United States v. Blok*, 88 U S App D.C. 326, 188 F2d 1019 (1951); *Klee v. United States*, 53 F2d 58 (CA 9th, Wash 1931); *Shepherd v. State*, 200 Ind 405, 164 NE 276 (1923); *Davis v. State*, 144 Miss 551, 110 So 447 (1926). The circumstances of the bailment are not set out with clarity in the evidence. One might infer that the automobile was loaned to the defendant alone or to the group as a whole. But even if the automobile was loaned to the entire party the defendant's interest was not so tenuous as to debar him from asserting his constitutional right against unlawful search. *In re Subpena Duces Tecum*, 81 F Supp 418 (DCND Calif SD, 1948).

■ The revolver was concealed by the device of having Mrs. Hoover sit on it. Thus, we might easily dispose of the case by ruling that the search, if in fact unlawful, was a search of Mrs. Hoover's person and not

of the automobile. Were this the case it would be her rights that were violated and the defendant would have no standing to make a complaint. *State v. Laundy,* supra. See also *Kwong How v. United States,* 71 F2d 71 (CA 9th Ore 1934); *United States v. Vlahos,* 19 F Supp 166 (DC Ore 1937). However, since the revolver was lying on the car seat we think that the search was equally a search of the car and of Mrs. Hoover. Neither party has raised the line of argument we have just suggested, and we will treat the search as of the automobile alone.

The state's argument in support of the search and seizure is two-fold. First, it maintains that a lawful arrest preceded the search and that the search and seizure, as incidents of the arrest, were lawful. But the argument continues: even assuming that the search and seizure preceded the arrest, they were so closely related in time to the arrest and so circumstanced as to be reasonable, and hence subject to no constitutional infirmity. We agree with both of these contentions.

 When a lawful arrest has been consummated a search without warrant of the arrested party's person and effects is generally lawful. *State v. Walker,* 135 Or 680, 296 P 850 (1931); *State v. Broadhurst,* 184 Or 178, 196 P2d 407 (1948), cert. den. 337 US 906, 69 S Ct 1046, 93 L Ed 1718 (1949). We say "generally" because the rule is not unqualified. ORS 133.310 sets forth the occasions which justify an officer in making an arrest without warrant.

> "A peace officer may arrest a person without a warrant:
> "(1) For a crime committed or attempted in his presence;
> "(2) When the person arrested has committed a felony, although not in his presence;
> "(3) When a felony has in fact been committed

and he has reasonable cause for believing the person arrested to have committed it * * *."

Taking the words of subsection (1) literally, any one who possesses a concealed weapon for which he has no license may be lawfully arrested without warrant by a police officer for a "crime committed in his presence." Such a construction would mean that any arrest followed by a search which produces contraband is lawful. In fact, however, the almost universal rule is that mere possession of a concealed firearm, without more, does not create a right either to arrest or to make a search without warrant. In order to qualify the crime as one committed in the police officer's "presence," the officer must have obtained some actual intimation of the offense whether through his own senses or from information supplied by another. See annotation "Arrest, or search and seizure, without warrant on suspicion or information as to unlawful possession of weapons" 92 ALR 490. The degree of knowledge which will justify an arrest or search incident to arrest varies widely from state to state. In the federal courts a search for contraband is justified only if there is "probable cause." "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been committed." *Brinegar v. United States*, 338 US 160, 175, 93 L Ed 1879, 69 S Ct 1302 (1949), quoting *Carroll v. United States*, 267 US 132, 69 L Ed 543, 45 S Ct 280, 39 ALR 790.

■ Oregon also has adopted the "probable cause" test. *State v. Duffy*, 135 Or 290, 295 P 953 (1931) declares:

"To justify an officer in making an arrest without a warrant mere suspicion is insufficient; like-

wise a belief unsupported by facts or circumstances will not justify his action. * * *

"The officer must have probable cause to believe in the guilt of the suspected party, and probable cause has been defined as the existence of such circumstances which would lead a reasonably prudent man to believe in the guilt of the accused party * * * *."

In the present case, giving the defendant the benefit of every doubt, and thus assuming that the search commenced when Officer Pierce asked him to step out of the automobile, there still remains upon the question of probable cause testimony as to the statements of the two men who claimed to have been threatened by the defendant with a revolver. These men had been talking to the defendant in front of a tavern at 2:30 in the morning. As the defendant's car pulled away they immediately came over to Pierce and told him of the threat. We think that under these circumstances the information obtained was sufficient to justify the officer in making an arrest and that the search which accompanied the arrest was reasonable.

■ Certainly there is no constitutional barrier to a search based upon information alone. That question was settled by *State v. DeFord*, 120 Or 444, 250 P 220 (1926), in which we upheld the constitutionality of a statute (OL 2225-5, Oregon Laws 1917, chapter 141 section 1) which read in part as follows:

"Any district attorney, sheriff, deputy sheriff, constable, or any police officer acting within his jurisdiction and any special agent of the Governor, having personal knowledge or reasonable information that intoxicating liquors are being unlawfully carried or transported by any boat, vehicle, or other conveyance, shall search such suspected vehicle, boat, or other conveyance, without a warrant, and without any affidavit being filed, and if such officer

finds upon or in the boat, vehicle, or other convey-
ance, intoxicating liquors unlawfully carried or
transported, he shall seize the same and arrest any
person or persons in charge of such vehicle, boat,
or other conveyance * * *."

The case was tried upon an agreed set of facts. A
casual informant, identified only as "a certain citizen
of Tillamook, Or., over the age of 21 years," told the
sheriff that the defendant was hauling a cargo of con-
traband liquor in his automobile. Acting under the
statute the sheriff dispatched two deputies who inter-
cepted the defendant, searched the automobile and, find-
ing liquor, arrested him. The trial court allowed a
motion to suppress the evidence and directed an ac-
quittal. Upon appeal by the state we held that the
lower court was in error, noting that this statute "does
not authorize the search of any man's house but only
the search of automobiles and other similar vehicles
and vessels. The search is authorized only when the
officer making the search has reasonable ground to
believe that such vehicle contains intoxicating liquor.
The officer making the search must arrest the driver
of the vehicle and forthwith take him before a magis-
trate."

Some cases hold that upon facts as strong or
stronger than in our own case mere information sup-
plied by a third party is not enough to justify an arrest
without warrant. *Hurd v. State*, 119 Tenn 583, 108
SW 1064 (1907); *Pickett v. State*, 99 Ga 12, 25 SE 608,
59 Am Stat Rep 226 (1896); *Roberson v. State*, 43
Fla 156, 29 So 535, 52 LRA 751 (1901); *Smallwood v.
Commonwealth*, 305 Ky 520, 204 SW2d 945 (1947).
But other cases, with which we agree, hold that under
proper circumstances mere information may be enough.
*Fusaro v. McKennell*, 120 Misc 434, 198 NYS 719
(1923); *State v. White*, 274 SW 17 (Mo 1925); *People*

*v. Jiminez,* 143 Cal App2d 671, 300 P2d 68 (1956);
*People v. Witt,* 159 Cal App2d 492, 324 P2d 79.

■ The question then presents itself, did a valid arrest precede or occur virtually simultaneously with the search and seizure in the present case. As we have seen, there is disagreement between the police witnesses as to whether the defendant was formally told that he was being placed under arrest. According to Officer Olson, Pierce told the defendant that he was placing him under arrest "for pointing a gun." The act of pointing a firearm is a misdemeanor. ORS 163.320. If we are to understand the words attributed to Pierce in a literal sense, they accomplished nothing toward making the arrest effective for the reason that the misdemeanor was not committed in the officer's presence and he could not lawfully make an arrest without a valid warrant. However, we do not think that Pierce's statement should be interpreted so narrowly. When he told the defendant that he was arresting him "for pointing a gun" he was putting Hoover under notice of arrest not for one particular misdemeanor but for all those crimes which might be charged in connection with the possession and use of the weapon. Thus, if Pierce actually made the statement attributed to him by Olson, the arrest was lawful. See ORS 133.330.

But Pierce's own testimony is to the contrary. He states that he does not remember telling the defendant that he was under arrest. If we give the defendant the benefit of the doubt and assume this to be the case it does not help him. ORS 133.210 defines arrest as "the taking of a person into custody so that he may be held to answer for a crime." ORS 133.250 states that an arrest is perfected by "an actual restraint of the person of the defendant or by his submission to the custody of the officer." In *State v. Christensen,* 151 Or 529, 51 P2d 835 (1935) we went so far as to hold that the mere

signaling and stopping by a police officer of one committing a traffic violation amounts to an arrest. The facts of that case help to explain the result. A police officer observed the defendant, a known bootlegger, drive by in his automobile while trying to avoid recognition. The officer's suspicions were aroused and he followed him. The defendant drove at a speed of 27 miles per hour through the business district of a city. Using this as a pretext for arrest the officer sounded his siren and the defendant pulled to the curb. The officer searched the car, found some jugs of liquor and brought the defendant before a magistrate without telling him that he was under arrest. We held that the search was lawful. A majority of the court thought that an arrest preceded the search. It said:

"* * * This court can not say as a matter of law that defendant was not guilty of violating the motor vehicle law in driving at that rate of speed under the circumstances. As this violation occurred in the presence of the officer, he had a right to make the arrest. * * * The stopping of appellant was in effect an arrest. The appellant, when he heard the officer's siren, submitted himself to the direction and custody of the officer. * * *"

Even if we hold that no arrest preceded the search of the defendant's automobile, it does not follow that the search was unconstitutional. Our constitution forbids unreasonable searches and seizures. A search which precedes rather than follows an arrest is not ipso facto unreasonable. We agree with those decisions which hold that a search undertaken merely for the purpose of bringing to light evidence with which to convict of a crime is not made lawful by the fact that the desired evidence is obtained. *State v. Duffy,* supra. See cases collected 51 ALR 424 at 439, 32 ALR 680-702. But where there is good reason to believe

that a crime is being committed a search which precedes arrest may be altogether reasonable and proper. This, in fact, is the rule established by decisions of this court.

*State v. McDaniel*, 115 Or 187, 231 P 965, 237 P 373 (1925), controls the disposition of this appeal. In the McDaniel case the defendant was indicted and convicted of the crime of having intoxicating liquor in his possession. The arrest came about when police officers observed that the defendant was inebriated. They followed him to his car and one of them said, "Hold on there, Mac, we are going to search the car and you." The automobile was searched by permission of the defendant. No liquor was found. The officers then proceeded to search the defendant against his will, pinioning his arms behind him. A bottle of liquor was discovered in a pocket. The defendant, after indictment, filed a timely motion for suppression and return of evidence. The trial court ruled that the search and seizure were unconstitutional but that the evidence was nonetheless admissible.

Two opinions were written on appeal. The first, by Justice PIPES, reversed the conviction. Four justices agreed that the search preceded the arrest, that it was unconstitutional for that reason and that the trial judge erred in failing to grant the motion to suppress. There were three dissents. Upon rehearing the conviction was affirmed, again by a four to three vote. Justice BELT wrote the majority opinion which held that an arrest had in fact been made before the search or, if not, that the arrest followed so close upon the search as to make them simultaneous acts. There was, therefore, no question of admissibility since the evidence was lawfully obtained. On the question of arrest the court said:

"When the defendant got into his automobile

and started the engine, and the officers stepped on to the running-board saying, 'Hold on there, Mac, we are going to search the car and you,' the arrest as tested by the above statutory provisions [ORS 133.210, 133.250, 133.310] was then and there consummated. The defendant certainly was under restraint and undoubtedly submitted to the custody of the officers. He knew them and knew what they intended to do. He also knew that he was guilty of committing a crime in their presence and that he was subject to arrest. * * * It is true that he was not held for the crime of being drunk in a public place or driving an automobile while in an intoxicated condition, but the crime for which he was held does not determine the validity of the arrest in the first instance. * * *"

The opinion then went on to discuss the outcome if the search did in fact precede the arrest. It said:

"* * * In our opinion it is immaterial whether the arrest preceded or followed the search if such acts were practically simultaneous, and if, in fact, the defendant was guilty of committing a crime in the presence of the officers for which he might have been arrested. In many instances it is dangerous for an officer to go through the formality of stating that the accused is under arrest, and the law does not require him to do so. It is oftentimes safer to act first and talk afterward. * * *"

The McDaniel case has been consistently followed in this state. In *State v. Duffy*, 135 Or 290, 295 P 953 (1931), the police were given information that a distillery was being operated in a Portland residential area and upon investigating detected an odor of cooking mash which was pinpointed to one home. When the door was opened in response to a knock the police forced their way in, discovered a distillery and immediately thereafter arrested the occupants, one of whom was the appellant Duffy. Then the police took possession of the house and lay in wait. After dark

an automobile drove up. When the police officers revealed themselves the occupants of the car attempted to back it up and drive off but were halted. They were then arrested and searched—there being some doubt as to the order of these events—and incriminating evidence was found. The appellant Knox was one of the occupants of the automobile. He and Duffy filed a timely motion to suppress the evidence which they claimed was obtained by an unlawful search of the house and automobile. Their contentions were rejected by the trial court and by this court on appeal. In holding that a search of the house was lawful we noted that the odor from the cooking mash made operation of the distillery a crime committed within the officer's presence, quoting from *State v. McDaniel* to the effect that "Sense of smell is often more unerring than that of sight." We next considered the question whether the officers "entered for the purpose of searching, or for the purpose of apprehending an offender" and decided that the primary purpose of the entry was to arrest the occupants although a still was discovered in the process. We also found that there was probable cause to search Knox's automobile and for that reason the search was not unlawful even if it preceded the arrest. In this connection the court declared that since it was not entirely clear whether the arrest preceded or followed the search it would assume that the search preceded the arrest. It, however, expressed the belief that the two occurred within a very few moments of each other and held that when such acts are practically simultaneous and the officers already possess probable cause for believing in the guilt of the accused, the fact that the search precedes the arrest does not render it illegal.

In *State v. Lee*, 120 Or 643, 253 P 533 (1927), another case arising under prohibition, police officers

acting under a valid warrant were searching a house when the odor of distilled mash wafted to them from Lee's neighboring barn. The barn was searched without warrant and a distillery discovered. Lee was not at home at the time but was arrested when he returned. The search and seizure were held to be lawful. The decision said that in order to justify seizure of property without a warrant it must appear that there was a "violation of the prohibition law in the presence of the officer." It continued:

> "For the purposes of determining whether or not an officer is justified in making a search and seizure, like the one in question, without a warrant, the officer is authorized and justified in acting upon the information he secures through the use of his senses of sight and smell, etc. * * *

> "The Constitutions, both state and federal, which prohibit unreasonable searches and seizures, are to be construed in conformity with the principles of the common law. At common law officers may arrest those who commit crimes in their presence, and may avert a crime in the process of commission in their presence by arrest, and without a search warrant may seize the instrument of the crime * * *

> "It is not essential in making an arrest without a warrant that the officer must absolutely know that an offense is being committed. He must believe it is being committed and must so believe upon the evidence of his own senses * * *."

We have already taken note of *State v. DeFord*, 120 Or 444, 250 P 220 (1926), where we upheld a statute which permitted police officers, acting upon knowledge or information, to search vehicles for liquor before making an arrest.

■ It is clear, then, from our decisions that a valid arrest need not precede search and seizure if there are reasonable grounds to believe in guilt and if the arrest follows close on the heels of the search. The cases to

which we have referred deal with the enforcement of prohibition laws, but we think that they adequately and fairly adjust the constitutional balance between the police power of the state and the right of the individual to be free from unreasonable searches and seizures. Particularly is this true where firearms are involved which menace the life of the arresting officer every second that they remain in the possession of the suspected offender.

We are fortified in our view by the fact that the courts of other states have adopted an identical position in cases involving firearms concealed about the person or in automobiles. *Porello v. State,* 121 Ohio St 280, 168 NE 135 (1929); *People v. Esposito,* 118 Misc 867, 194 NYS 326 (1922); *Fusaro v. McKennell,* 120 Misc 434, 198 NYS 719 (1923); *People v. Didonna,* 124 Misc 872, 210 NYS 135 (1925); *People v. Jiminez,* 143 Cal App2d 671, 300 P2d 68 (1956) (Police had right to search car for firearms, hence when narcotics were discovered they were lawfully seized); *People v. Witt,* supra (hearing denied by supreme court, 1958); *Dickerson v. United States,* 120 A2d 588 (Mun Ct App D.C. 1956).

The rule that search may precede arrest has been applied in cases involving narcotics and other contraband. *Le Kwong Nom v. United States,* 20 F2d 470 (CA2d 1927); *People v. DeLuca,* 343 Ill 269, 175 NE 370 (1931). And it has been applied by other courts in prohibition cases. *Husty v. United States,* 282 US 694, 75 L Ed 629, 51 S Ct 240, 74 ALR 1407 (1931); *United States v. Murray,* 51 F2d 516 (DC Md 1931); *State v. Reynolds,* 101 Conn 224, 125 A 636 (1924).

■ We have held that there was probable cause to warrant the officers in believing that the defendant had committed a crime. The whole episode in front of Basin Motors, from the halting of the defendant's

automobile to the discovery of the weapon and arrest, consumed but two or three minutes. Under these circumstances the search and seizure of the revolver were not in violation of the state constitution regardless of whether the search preceded or followed the arrest. Since this is true the weapon was properly admitted into evidence. We overrule the appellant's first and sixth assignments of error and so much of the fifth, seventh and tenth as are directed at the suppression of evidence.

The defendant next contends that the statute under which he was indicted, ORS 166.270, is unconstitutional and that his demurrer to the indictment should have been sustained. We recently upheld ORS 166.270 against a claim that it denied equal protection of the laws as guaranteed by Oregon Constitution, Article I section 20. *State v. Robinson,* 217 Or 612, 343 P2d 886 (1959). Appellant presents a different attack, assailing the statute on the ground that it is "too indefinite and uncertain as to what acts would constitute a crime under that section." Referring to the statute, he says, "It is true that a weapon in his possession would ordinarily be a weapon upon his person. But what would constitute a weapon under his custody or control under this section?"

The attack cannot be sustained. *State v. Anthony,* 179 Or 282, 169 P2d 587, cert den 330 US 826, 91 L Ed 1276, 67 S Ct 865, declared, "the fundamental principle [is] that in the creation of an offense a statute must be sufficiently certain to show what the legislature intended to prohibit." That decision upheld a conviction under a statute which prohibited, on pain of as much as fifteen years' imprisonment for its violation, "any act or practice of sexual perversity with mankind." We said:

"Notwithstanding the established rule that in-

definite statutes are subject to condemnation under the 14th Amendment, it cannot be said that every statute containing broad and indefinite prohibitions is to be held unconstitutional as wanting in due process. A criminal statute passed pursuant to the police power should be stricken down for indefiniteness only if it cannot be saved wholly or in part by judicial application of the rules of statutory construction. * * *"

The opinion considered the problem of unconstitutional vagueness in federal and state decisions with care and fullness. The proper test, said the court, "is whether we can properly limit the meaning of general words to cases reasonably within them and within the evil which the legislature intended to suppress." See also *State v. Opie*, 179 Or 187, 170 P2d 736 (1946).

*City of Portland v. Goodwin*, 187 Or 409, 210 P2d 577 (1949) construed a Portland ordinance which made it unlawful for anyone to be on the streets between one and five a.m. "without having and disclosing a lawful purpose." The decision ruled that "If an enactment can be given any reasonable interpretation consistent with its validity, such interpretation should be adopted" and held that the words "without having a lawful purpose" were equivalent to "having an unlawful purpose."

In *State v. Wojahn*, 204 Or 84, 282 P2d 675 (1955) we upheld the negligent homicide statute, ORS 163.091, against a claim that it was so vague and indefinite as to amount to an ex post facto law. The statute provides in part:

"When the death of any person ensues within one year as the proximate result of injuries caused by * * * the driving of any motor vehicle * * * in a grossly negligent manner * * * the person driving such vehicle * * * is guilty of negligent homicide * * *."

ORS 161.010 (2) defines "negligent" as "a want of such attention to the nature or probable consequences of the act or omission referred to as a prudent man ordinarily bestows in acting in his own concerns." In referring to the standard to be observed in writing a criminal statute the decision pointed out that the standard must be expressed with sufficient clarity so that persons of common intelligence, after reading the statute, will not be compelled to guess as to its import or be unable to determine with reasonable certainty those to whom it is applicable. It added that the standard need not be defined with such precision that those affected by it will never be required to hazard their freedom upon correctly foreseeing the manner in which a matter of degree may be resolved by the jury.

No ingenuity is required to fit the defendant's conduct within the category of acts prohibited by the statute under which he was indicted. The penalties of ORS 166.270 apply to any convict who "owns or has in his possession or under his custody or control" any firearm capable of being concealed on the person. There was in this case no evidence of ownership. But the jury could have believed from the testimony, and probably did, that the defendant pointed the revolver at two persons on the street with whom he was involved in an argument and that he retained the weapon in his custody until overtaken by Officer Pierce in front of Basin Motors whereupon he passed it to Mrs. Hoover. No better example of the very evil the statute was designed to prevent could be furnished than by the defendant's actions in flourishing a revolver and threatening its use against those who displeased him. For the purposes of disposing of this assignment of error we need not probe the outer limits of "possession," "custody," or "control." It is enough to say that in possessing and controlling the weapon long enough to

threaten others with it and thereafter in keeping it about him until overtaken by the police the defendant violated the statute at its most central point.

■ As a further part of his second assignment of error appellant alleges that the indictment did not substantially conform to the requirements of ORS 132.540 and 132.570 and hence that the demurrer should also have been sustained on that ground. ORS 132.540 prescribes the necessary formal and substantive contents of an indictment. Subsection (1)(f) reads as follows:

"The act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, in such a manner as to enable a person of common understanding to know what is intended and with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case; provided, that the indictment shall not contain allegations that the defendant has previously been convicted of the violation of any statute which may subject him to enhanced penalties."

The indictment recited Hoover's previous conviction for automobile theft and it is this fact which is challenged as contrary to the above statute. Appellant also argues that the need for setting forth the previous conviction is obviated by ORS 132.570 which reads as follows:

"Neither presumptions of law nor matters of which judicial notice is taken need be stated in an indictment."

Neither ORS 132.540 nor ORS 132.570 have any bearing here. The second of these statutes—aside from the fact that it is clearly permissive and not mandatory—has only the administrative purpose of reducing surplus verbiage. The more colorable contention is that ORS 132.540 forbids recitation in the indictment of a previous conviction. If the statute read merely,

"provided, that the indictment shall not contain allegations that the defendant has previously been convicted of the violation of any statute," appellant would have a plausible case. But he overlooks the important qualifying language "which may subject him to enhanced penalties." The defendant is not subjected to any "enhanced" penalty by a conviction under ORS 166.270. There is but one penalty for the statute's violation and the statute itself prescribes that penalty. One who is not a convict can not possibly be guilty of the proscribed crime of this statute, and hence there is no question of "enhanced" penalties. Moreover, failure to set forth the previous conviction in the indictment would be a fatal bar to a lawful conviction under ORS 166.270 since prior conviction is a material element of the crime and must, under the same subsection (1)(f) of ORS 132.540 on which appellant relies, be "clearly and distinctly set forth." Moreover, appellant ignores ORS 132.530 which reads:

> "The indictment must be direct and certain as to the party charged, the crime charged and the particular circumstances of the crime charged when such circumstances are necessary to constitute a complete crime."

ORS 132.540 (1)(f), forbidding allegations of previous convictions in the indictment, is clearly directed to the habitual criminal provisions of our code collected in ORS chapter 168. These statutes provide that offenders with one or more previous convictions shall be subjected to increased sentences upon conviction. The jury has no function with regard to such sentencing. Indeed, by virtue of ORS 168.040, an increased sentence may be imposed two years after trial and conviction if within that time a previous conviction is brought to the attention of the trial judge. Thus, the only possible purpose of alleging previous convictions

in the indictment would be to create prejudice against the defendant and it is this which ORS 132.540 guards against. The appellant's second assignment of error lacks merit.

■ The third assignment of error attacks the propriety of admitting into evidence "State's Exhibit B," a court record showing the prior conviction of the defendant. The latter challenges the exhibit on two grounds: first, that it was "irrelevant and immaterial and incompetent" and second, that there was a fatal variance between indictment and proof since the indictment charged a previous sentencing on April 22, 1950, while the exhibit indicated that sentence was pronounced on April 27, 1950.

In support of the first branch of this assignment, appellant argues in his brief:

"The defendant respectfully submits that the corpus delicti of the crime charged in the indictment is the possession of a firearm capable of being concealed upon his person. In this case, there was no proof that the defendant had such a firearm in his possession, therefore, the issue of whether or not he had been a convict convicted of the crime alleged in the indictment would be irrelevant and immaterial and incompetent to prove the issues or the corpus delicti of the case."

Ample evidence was introduced from which the jury could have inferred the defendant's possession, custody or control of a firearm. Mrs. Hood testified that the defendant asked Mrs. Hoover, shortly before the police stopped him in front of Basin Motors, "what she could do with the gun or where she could hide it," and that Mrs. Hoover "told him to give it to her and she would sit on it." She did not, however, testify that she saw a weapon pass between them. If this were the only testimony in the case we might have cause to regard

it with suspicion since Mrs. Hood, like the defendant, is a convict and thus subject to the statute under which he was convicted. But Mrs. Hood's testimony is corroborated by admissions of the defendant himself. When Officer Pierce asked him why he "pulled" a gun on the two men outside Vern's Tavern he replied that "no damn Mexicans were going to pull a flip-blade knife on him." And he also asked Officer Olson why he was under arrest, again stating, "No one is going to pull a knife on me." These statements constituted admissions by the defendant that he was in fact using a revolver. The testimony of the officers that the defendant made these statements went unchallenged since the defendant did not take the witness stand on his own behalf.

The second part of this assignment of error is directed to the five day variance between the prior sentence for felony as charged in the indictment and as proved by "State's Exhibit B." Appellant made an objection to the offer of this exhibit at the trial on the grounds that it was "irrelevant and immaterial and incompetent to any issues in this case," but not on the specific ground of variance. The state argues that the appellant has waived his right to urge the variance on appeal by not making a specific objection in the trial court. We think this argument is well taken. It is the nearly universal rule in this country that "a general objection, if overruled, cannot avail the objector on appeal." 1 Wigmore, Evidence (3rd ed) section 18 page 332. See cases collected, footnote 24. An objection on the ground that evidence is irrelevant, immaterial and incompetent is a general objection. *Een v. Consolidated Freightways*, 220 F2d 82 (CA 8th 1955); *O'Dell v. Goodsell*, 152 Neb 290, 41 NW2d 123 (1950); *Noonan v. Caledonia Gold Mining Co.*, 121 US 393, 30 L Ed 1061, 7 S Ct 911; *Hartzell v. United States*,

72 F2d 569 (CA 8th 1934); *Eckman v. Funderburg*, 183 Ind 208, 108 NE 577 (1915); *Secor v. Siver*, 188 Iowa 1126, 161 NW 769, 176 NW 981 (1917); *Hafner Mfg. Co. v. St. Louis*, 262 Mo 621, 172 SW 28 (1914); *Murray v. Frick*, 277 Pa 190, 121 A 47 (1923); *Gibbs v. Barksdale*, 199 Okl 141, 184 P2d 755 (1947). "The only modification of this broad rule is that if on the face of the evidence, in its relation to the rest of the case, there appears no purpose whatever for which it could have been admissible, then a general objection, though overruled, will be deemed to have been sufficient." 1 Wigmore, Evidence (3d ed) section 18 page 332 and cases cited. See *State v. Magone*, 32 Or 206, 51 P 453 (1897). It has been pointed out that this exception does not apply where the objection "can be removed by evidence, or by the act of the party under the sanction of the Court, or by the action of the Court itself." *Clauser v. Stone*, 29 Ill 114 (1862). See also *Rush v. French*, 1 Ariz 99, 25 P 816 (1874).

Oregon has followed the great majority of states in holding that general objections on the ground of irrelevance, immateriality and incompetence serve to preserve very little on appeal. *Stroh v. Rhoads*, 188 Or 563, 217 P2d 245 (1950); *Gallagher v. Portland Traction Co.*, 181 Or 385, 182 P2d 354 (1947); *Goldfoot v. Lofgren*, 135 Or 533, 296 P 843 (1931); *Pinder v. Wickstrom*, 80 Or 118, 156 P 583 (1916); *State v. Von Klein*, 71 Or 159, 142 P 549 (1914); *Ellis v. Abbott*, 69 Or 234, 138 P 488 (1914). In *Ellis v. Abbott*, where depositions were admitted over an objection of "incompetent, irrelevant, immaterial and improper," we said:

> "In the examination of a cause upon appeal, the inquiry is limited to the identical question considered by the trial court. Any other course of procedure would not be a review. An attorney cannot be permitted to speculate upon the possibility

of a judgment favorable to his client, and, if disappointed in this particular, enlarge the objections interposed at the trial. The error insisted upon was not presented in such manner as to notify the court and adverse counsel of the real question now urged, so as to afford an opportunity to make the requisite proof as a condition precedent to the introduction of the deposition in evidence. Such being the case, the error complained of is unavailing."

Since the appellant did not preserve his assignment of error by a proper objection at the trial, the next question is whether a variance of the kind here in controversy is one which may be waived. It is clear, we think, that this variance is one which may be waived. The rule established by a large number of cases is that failure to object to a variance between indictment and proof amounts to a waiver. We cite only a few of the most recent cases which so hold: *Craig v. State*, 236 Ind 434, 140 NE2d 881 (1957) ; *Commonwealth v. Banmiller*, 184 Pa Super 552, 136 A2d 141 (1957) ; *Patton v. State*, 39 Ala App 308, 98 So2d 621 (1957) ; *People v. Flowers*, 14 Ill2d 406, 152 NE2d 838 (1958) ; *Madison v. State*, 234 Ind 517, 130 NE2d 35 (1955) ; *Wiggins v. State*, 215 Miss 441, 61 So2d 145 (1952) ; *State ex rel Meng v. Todaro*, 161 Ohio St 348, 119 NE2d 281 (1954) ; *State v. Gilmore*, 47 NM 59, 134 P2d 541 (1943).

The reason is clear. A criminal defendant who is genuinely surprised by a variance in the proof of an allegation of the indictment can be expected to raise an objection at the trial. Furthermore, as pointed out by *Madison v. State*, supra:

"Of course, where the variance is of such a character or so great that an essential allegation of the offense has not been proved, there may also be a failure of evidence to sustain the verdict or finding. In such a case the error also may be raised

under such a specification in a motion for a new trial or on a motion for directed verdict or finding."

■ Since we hold that the appellant has waived his right to urge this variance on appeal we are not in strict duty called upon to decide whether a five day variance in fixing the date of sentence of a prior conviction is fatal to a valid conviction under ORS 166.270. But the appellant can scarcely be serious in this connection. We have stated on a number of occasions that a variance is not grounds for acquittal unless material. *State v. Hansen*, 195 Or 169, 244 P2d 990 (1952); *State v. Cook*, 154 Or 62, 59 P2d 249 (1936); *State v. Hibberd*, 123 Or 490, 262 P 950 (1928). As stated in *State v. Cook*, supra:

> "Under the modern practice, a variance is not material unless it misleads the accused in making his defense or may expose him to the danger of again being put in jeopardy for the same offense."

Observing this practice we have held that a variance between the date of an offense charged in the indictment and the date proven is not fatal, *State v. Pace*, 187 Or 498, 212 P2d 755 (1950); *State v. Poole*, 161 Or 481, 90 P2d 472 (1939); *State v. Coss*, 53 Or 462, 101 P 193 (1909); that a material variance does not develop if a promissory note described in the indictment bears a date different by two days from that introduced on trial, *State v. Thompson*, 28 Or 296, 42 P 1002 (1895); that it is not material if an indictment wrongly describes a liquor license as issued to two defendants when in fact it was issued to only one of them, *State v. Cook*, supra; that if an indictment charges the theft of several items, proof of the theft of some of them but not all is sufficient, *State v. Hibberd*, supra; that a secondary principal may validly be convicted on an indictment which charges him with committing the felony, *State v. Kirk*, 10 Or 505 (1882)

(citing MacKalley's Case, 9 Co Rep 67). Finally, although we have not been called upon until now to decide the point, other courts have held that where an indictment must set forth prior judicial proceedings, minor variances in proof owing to clerical errors will be deemed immaterial. 5 Wharton's Criminal Law and Procedure, section 2068 page 223, citing *State v. Cerfoglio*, 46 Nev 332, 205 P 791, 213 P 102, 27 ALR 848; *State v. Herrera*, 28 NM 155, 207 P 1085, 24 ALR 1134; *Harden v. State*, 85 Tex Crim 220, 211 SW 233, 4 ALR 1308. We dismiss the third assignment of error for want of proper objection taken below.

The fourth assignment of error is to the admission of the revolver into evidence on the ground that it was not properly identified nor shown to have been in the defendant's possession. We have already disposed of the latter part of this objection. The first part is also without merit since a study of the transcript reveals that a proper foundation for admission of the evidence was laid. We shall refrain from setting forth a review of it. It clearly shows that a good foundation was laid.

■ Four cartridges were a part of "State's Exhibit A," but the trial judge excluded them from evidence for the reason that no proper foundation was laid. Appellant contends that he was prejudiced, since the cartridges were exhibited in court and "separated from the holster in plain sight of the jury." The gravamen of the crime charged is possession of a weapon and it was of no consequence whether the weapon was loaded or unloaded. The cartridges were meaningless unless the jury decided first that the defendant had the weapon in his possession. While granting that the jury could have drawn improper inferences from the cartridges, we do not think that any error justifying a reversal occurred from the act of bringing them into the courtroom. The fact that the judge excluded them

from evidence in open court no doubt had a proper effect upon the minds of the jurors. The fourth assignment of error lacks merit.

The fifth, seventh and tenth assignments of error, consolidated in appellant's brief, are fully dealt with in other parts of this opinion and are overruled.

■ The eighth assignment of error is directed at some instructions given by the trial judge. The instructions elucidated the law of arrest by a police officer without warrant and declared that the crime of "pointing a weapon" was a misdemeanor. The appellant (defendant) argues that since "the question of arrest was not an issue in the case" the judge, if he instructed on this point at all, should also have instructed on the law of search and seizure. His brief states:

> "There is no question but what this instruction tended to mislead the jury to understand that the Court condoned the actions of the police officers in the arrest and seizure and, perhaps, of the very charge upon which the defendant was being tried."

The jury was not called upon to determine any issue as to the lawfulness of the arrest or of the search and seizure. Lawful arrest was not part of the corpus delicti of the crime. A finding of guilty would ipso facto legitimize the arrest. ORS 133.310 (2). And the lawfulness of the search, when raised, was a preliminary question for the court. In this case it was raised by a timely motion to suppress evidence. The instructions on arrest were gratuitous, but that does not make them error requiring a reversal of the conviction. *State v. Selby*, 73 Or 378, 144 P 657 (1914):

> "Courts should confine their charges to the facts of the case; but an abstract charge that states the law correctly cannot be the basis for a reversal of the judgment appealed from, unless it appears to

the appellate court that it did mislead, or may have misled, the jury to the prejudice of the appellant."

See also *State v. Weston*, 155 Or 556, 581, 64 P2d 536 (1937).

We fail to understand how the instructions on the law of arrest could have misled the jury to the defendant's prejudice. We think that if there was any error it was in his favor. By instructing that the crime of pointing a firearm was a misdemeanor the judge in effect told the jury that it might find that the arrest was unlawful and thereby gave it an opportunity to acquit on that ground. No reasonable man could interpret these instructions—particularly when read in connection with the remainder of the charge—to mean that the trial judge "condoned" the actions of the police officers. The assignment of error is without merit.

Finally, appellant assigns as error the failure to give the following requested instruction:

"In this regard, even though you believe the defendant to be guilty, if you do not find that his guilt has been established by the evidence beyond a reasonable doubt and to a moral certainty, you should find the defendant not guilty."

This assignment of error is wholly lacking in merit. No fewer than twenty-two times during the course of a short charge the trial judge instructed the jury that it must be satisfied of the defendant's guilt beyond a reasonable doubt before it could return a verdict for the state. The term "reasonable doubt" was correctly defined. The assignment of error lacks merit.

We have carefully examined the arguments of counsel and the proceedings at the trial below. We were impressed by the jealous regard with which the trial judge protected the rights of the defendant at every stage of the trial. Every precaution was taken

to the end that he might be assured a fair and unprejudiced hearing. We think that no error was committed and that the verdict of the jury is fully supported by the evidence.

The judgment is affirmed.