SOUTH EUCLID (CITY), PLAINTIFF, v. PALLADINO ET, DEFENDANTS.

South Euclid Municipal Court, Cuyahoga County.

Nos. 6041, 6042.   Decided October 31, 1963.

KLEIN, J.   At or about 2:50 A. M. on September 9, 1963, Lt. Robert Van Veghel of the South Euclid Police observed two persons in a motor vehicle headed in a westerly direction on Berwald Road, at, or near, the stop sign at the Intersection of Berwald and Green Roads.   Van Veghel thought that he recognized the defendant August Palladino, Jr., as the driver of this car.   (At the time, Van Veghel knew that Palladino's name was included on the police department's list of known criminals, said list being referred to by the police as the "hoodlum list" or "Racket sheet.")   After identifying Palladino's

license number and after positively identifying Palladino as the driver, Van Veghel stopped the Palladino car several streets away from where he had originally noticed it.

Upon inquiry, Palladino was unable to give Van Veghel an explanation of what he was doing on Berwald or Emerson Roads other than to state that he and the other occupant of the car (the defendant Immormino) had been to a restaurant to get something to eat and they just wanted to ride around and talk. Palladino admitted that neither he nor his companion knew anyone on either Berwald or Emerson Roads (Berwald and Emerson are located to the east of Green Road. They are entirely residential streets that run in a semi-circle or horseshoe off Green Road and each of these streets runs into Green Road but neither connect with any other street). While talking to Palladino, Van Veghel observed a part of a leather glove sticking out from under the front seat. Upon inquiry, Palladino responded that his brother might have left the glove in the car. Van Veghel informed Palladino that he was a suspicious person and suggested to him he would have to be taken in for investigation because he could not give a satisfactory account of himself. (There was also some testimony by Van Veghel that he used the term "arrest" in his conversation with Palladino.)

While Van Veghel was questioning Palladino, Officers O'-Malley and Plantner arrived at the scene. O'Malley recognized the other occupant of the car as Charles Richard Immormino, a person known to O'Malley as having a criminal record. O'Malley advised Van Veghel that Immormino's name was included on the police department's "hoodlum list" or "racket sheet."

Van Veghel then asked Palladino what he had in the trunk of his car. When Palladino responded "nothing," Van Veghel asked if he could look inside? Palladino responded in the affirmative and gave Van Veghel the trunk keys. When the trunk was opened, a stocking cap and a complete change of clothing was observed therein. The police also checked the unlocked glove compartment and found two screw drivers, two sets of channel locks, a wire cutter, and another pair of gloves.

Palladino and Immormino were taken to the South Euclid

26

Police Station, interrogated, and subsequently charged with being suspicious persons under South Euclid Ordinance No. 573.01.

The evidence established that Palladino resided on Prasse Road, a street which runs in a westerly direction off Green Road. Furthermore, according to the testimony of Lt. Van Veghel, there have been numerous burglaries in South Euclid in recent months.

This matter is now before this Court on a "Motion to Suppress" evidence.

The applicable portions of South Euclid Ordinance No. 573.01 entitled "Suspicious Persons and Vagrants" read as follows:

"It shall be unlawful for any suspicious person to be within the City. The following shall be deemed suspicious persons:

*****

"(c) Any person upon whose person or in whose possession shall be found any instrument, tool or other implement for picking locks or pockets or any implement that is usually employed or that reasonably may be inferred to have been designed to be employed in the commission of any felony, misdemeanor or the violation of any ordinance and who shall fail to account satisfactorily for the possession of same.

*****

"(e) Any person who wanders about the streets or other public ways or who is found abroad at late or unusual hours in the night without any visible or lawful business and who does not give satisfactory account of himself.

*****

"(g) Any—person known to obtain his living by criminal means and practices or who is known to be a companion and associate of criminals or other dissolute persons."

The above ordinance is a misdemeanor. Section 2935.03, Revised Code, states when an officer may arrest without a warrant for the violation of a misdemeanor. This Section provides as follows:

"A—police officer—shall arrest and detain a person found violating—an ordinance of a municipal corporation, until a warrant can be obtained."

It is clear that at the time they were apprehended by Van

Veghel the defendants' actions were such as to be encompassed by Ordinance No. 573.01 (e) and (g),[1] and the search of the Palladino car was incidental to this arrest. The doctrine that a search without a warrant may be conducted if incidental to a lawful arrest is a long established principle of law. On page 1634 of its decision in *Ker* v. *California*, 83 S. Ct., 1623 (1963), the Supreme Court of the United States said:

"—The doctrine that a search without warrant may be lawfully conducted if incident to a lawful arrest has long been recognized as consistent with the Fourth Amendment's protection against unreasonable searches and seizures. See *Marron* v. *United States*, 275 U. S., 192, 48 S. Ct., 74, 72 L. Ed., 231 (1927); *Harris* v. *United States*, 331 U. S., 145, 67 S. Ct., 1098, 91 L. Ed., 1399 (1947); *Abel* v. *United States*, 362 U. S., 217, 80 S. Ct., 683, 4 L. Ed. (2d), 668 (1960); Kaplan, Search and Seizure: A No-Man's Land in the Criminal Law, 49 Cal. L. Rev., 474, 490-493 (1961). The cases have imposed no requirement that the arrest be under authority of an arrest warrant, but only that it be lawful. See *Marron* v. *United States, supra,* 275 U. S. at 198-199, 48 S. Ct., at 76-77, 72 L. Ed., 231; *United States* v. *Rabinowitz, supra,* 339 U. S., at 61, 70 S. Ct., at 433, 94 L. Ed., 653; cf. *Agnello* v. *United States*, 269 U. S., 20, 30-31, 46 S. Ct., 4, 5-6, 70 L. Ed., 145 (1925)—."

On page 75 of its decision in *State* v. *Beck*, 175 Ohio St., 73 (1963), the Ohio Supreme Court stated as follows:

"The search herein took place as an incident of an arrest, and it has been held that a search which is incidental to a valid arrest does not constitute an unreasonable and illegal search. *Harris* v. *United States*, 331 U. S., 145, 91 L. Ed., 1399, 67 S. Ct., 1098."

But even if we were to assume that the incidental search of defendants' car preceded rather than followed their arrest, it would not inevitably follow that the subsequent search violated the Fourth Amendment's prohibition against "unreasonable

---

1. Counsel for the defendants did not argue the constitutionality of this ordinance at the oral hearing or in his brief. Therefore, in ruling on this motion, this court has assumed that No. 573.01 is constitutional.

28

searches and seizures."[2] This rule was ably expressed by the Supreme Court of Oregon in *State* v. *Hoover*, 219 Or., 288, 347 P. (2d), 69, 89 A. L. R. (2d), 695 (1959), as follows:

"Even if we hold that no arrest preceded the search of the defendant's automobile, it does not follow that the search was unconstitutional. Our constitution forbids unreasonable searches and seizures. A search which precedes rather than follows an arrest is not ipso facto unreasonable. * * * But where there is good reason to believe that a crime is being committed a search which precedes arrest may be altogether reasonable and proper. * * *" 219 Or., 302-303.

If there is probable cause to believe that a crime has been committed, a search without a warrant may not violate the Fourth Amendment. *Carroll* v. *United States*, 267 U. S., 132 (1925). In determining whether or not the police officer making the search had probable cause, the courts have held that mere suspicion that a crime has been committed is not tantamount to probable cause. *Brinegar* v. *United States*, 338 U. S., 160, 93 L. Ed., 1879, 69 S. Ct., 1302 (1949). In the *Brinegar case*, the United States Supreme Court defined "probable cause" and discussed the law enforcement problem necessitating the search of an automobile as follows:

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' *McCarthy* v. *De Armit*, 99 Pa., 63, 69, * * *. Probable cause exists where 'the facts and circumstances within their (the officers') knowledge, and of which they had reasonably trustworthy information, (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll* v. *United States*, 267 U. S., 132, 162 * * *.

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. *Because many situations which confront officers in the course*

---

2. *Mapp* v. *Ohio*, 367 U. S., 643, 6 L. Ed. (2d), 1081, 81 S. Ct., 1684 (1961) (86 Abs., 513), established that, as a matter of due process, evidence obtained by a search and seizure in violation of the Fourth Amendment to the Constitution of the United States is inadmissible in a state court. See also, *State* v. *Young*, 91 Ohio Law Abs., 21, 185 N. E. (2d), 33 (1962); *Ker* v. *California, supra.*

*of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.* The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

"The troublesome line posed by the facts in the *Carroll case* and this case is one between mere suspicion and probable cause. That line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances. No problem of searching the home or any other place of privacy was presented either in *Carroll* or here. Both cases involve freedom to use public highways in swiftly moving vehicles for dealing in contraband, and to be unmolested by investigation and search in those movements. In such a case the citizen who has given no good cause for believing he is engaged in that sort of activity is entitled to proceed on his way without interference. But one who recently and repeatedly has given substantial ground for believing that he is engaging in the forbidden transportation in the area of his usual operations has no such immunity, if the officer who intercepts him in that region knows that fact at the time he makes the interception and the circumstances under which it is made are not such as to indicate the suspect is going about legitimate affairs." 338 U. S., 175-177. (Emphasis added.)

Did Van Veghel have probable cause to believe a crime had been committed prior to his searching the Palladino car, or was his search based on mere suspicion? Before answering this inquiry, it should be stated that a search of an automobile without a warrant is more readily sustained by the courts than a search of a private dwelling without a warrant. *Brinegar* v. *United States, supra; Bourg* v. *United States,* 286 F. (2d), 124 (1960) ; *Porello* v. *State,* 121 Ohio St., 280, 168 N. E., 135 (1929) ; *Houck* v. *State,* 106 Ohio St., 195, 140 N. E., 112 (1922) ; *State* v. *Coleman,* 186 N. E. (2d), 93 (1962), cert. den., 191 N. E. (2d),

30

58; Day and Berkman, Search and Seizure and the Exclusionary Rule: A Re-Examination in the Wake of *Mapp* v. *Ohio.* 13 Western Reserve Law Review, 56, 86-87 (1961). In *State* v. *Hoover, supra,* the court stated as follows:

"This court has from time to time expressed itself as more willing to sustain searches of automobiles than of other types of property * * *" 219 Or., 296.

In 47 Am. Jur., Search and Seizures, Section 52, Pages 532-533, this rule is stated as follows:

"* * * or a search may be reasonable and entirely within the rights of an officer when he has no search warrant, as for example, a search incident to a lawful arrest, a search in an open field or wood, or, in some cases, *a search of a vehicle or other means of transportation* * * *" (Emphasis added.)

Prior to searching the Palladino car, Van Veghel was aware of the following facts:

1. The occupants of the car were both known criminals.

2. It was 2:50 A. M.

3. The defendants were observed coming off a side street. This side street does not go anywhere except into another side street. Both these streets contain nothing but residential homes. These homes offer nothing of interest to a sightseer, and no one would ordinarily enter one of these streets at 2:50 A. M., except residents thereof or one of their guests. The defendant Palladino lived on the other side of Green Road, a short distance away. He was a resident of the community. There would be no reason to believe that he would get lost within the general vicinity of his own house—nor, upon inquiry, did he make such a contention.

4. A leather glove was observed on the floor of the car. It was summer, and this is an article of clothing which is not customarily worn at this time of year.

5. The defendant Palladino could not give a satisfactory account of why he was on Berwald or Emerson Roads.

6. There have been a number of burglaries in South Euclid in recent months.

True enough, Van Veghel based his search and seizure on suspicion of burglary, larceny or robbery—but not on "mere suspicion." Rather, he had a "reasonable ground" for his

belief supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. *Bock* v. *Cincinnati,* 43 Ohio App., 257, 262, 183 N. E., 119, 121. Apparently, it developed that no such crime had been committed that evening. But hindsight is always better than foresight. We must consider Van Veghel's conduct in the light of how the picture appeared to him at 2:50 A. M., not by what ultimately developed. The Supreme Court of Ohio in *State* v. *Beck, supra,* stated as follows:

"Next, was their probable cause for making the arrest? 'Probable cause' is incapable of any exact definition applicable to all cases. However, the Supreme Court of the United States said in *Henry* v. *United States,* 361 U. S., 98, 102, 4 L. Ed. (2d), 134, 80 S. Ct., 168:

" 'Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.' * * *

"Therefore, a question of fact is presented in each case, and where the facts in the possession of the police are sufficient to cause a reasonable and prudent man to believe that a felony has been committed and the accused committed it, probable cause is present." 175 Ohio St., 75-76.

In *Porello* v. *State, supra,* and in *Houck* v. *State, supra,* the Supreme Court of Ohio applied a "bona fide-honest belief" test. On page 285 of *Porello,* the court said:

"This is not a case involving the search of a dwelling house. Here we have a search made of a person and of an automobile, under circumstances in which the police officers acted *bona fide* and upon information which induced in them *an honest belief* that the person arrested was in the act of violating the law. Paralysis of the police system would result if duly authorized officers were compelled minutely to verify their suspicions prior to acting upon honest belief in search and arrest under such circumstances." (Emphasis added.)

In Syllabus 2 of *Houck,* the Ohio Supreme Court said:

"A search of an automobile by an officer and a seizure by him of intoxicating liquor then being possessed and transported in violation of law, without a search warrant, is authorized though the officer has no previous knowledge of such

violation *provided he acts in good faith and upon such information as induces the honest belief* that the person in charge of the automobile is in the act of violating the law." (Emphasis added.)

The right to be secure from unreasonable searches and seizures is a fundamental privilege of all Americans. But this court cannot be unmindful of another right—the right of the people to be protected against criminal acts. We do not have before us a situation where two pastors are out for a Sunday afternoon drive, but, rather, we are confronted with two men with criminal records prowling the city streets in an automobile during the wee hours of the morning without being able to give a satisfactory reason for being on these streets.

The reasonableness of a search and seizure is a question of fact to be determined in the first instance by the trial court. *State* v. *Young, supra.* This determination must, however, be made "* * * in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of - - - (the United States Supreme Court) applying that Amendment * * *" *Ker* v. *California, supra,* 83 S. Ct., at 1630. Whether Van Veghel's search was based on mere suspicion or whether he had probable cause therefor is indeed a very close question. But, nevertheless, and not being unmindful of the admonition of the Supreme Court of the United States in the *Ker case,* it is the opinion of this trial court that when one considers, in the aggregate, all the factors which Van Veghel had before him, he had probable cause for searching the Palladino car. *Gaskins* v. *State,* 89 So. (2d), 867 (1956); *Gispert* v. *State,* 118 So. (2d), 596 (1960); *People* v. *Blodgett,* 46 Cal. (2d), 114, 293 P. (2d), 57 (1956); *People* v. *Cantley,* 163 Cal. App. (2d), 762, 329 P. (2d), 993 (1958); *State* v. *Brooks,* 57 Wash. (2d), 422, 357 P. (2d), 735 (1960).

In view of the conclusions set forth above, this court has not considered the question of whether the defendant Palladino voluntarily consented to the search of his car. *State* v. *Lett,* 114 Ohio App., 414, 178 N. E. (2d), 96 (1961).

The motion to suppress is overruled.